On September 4, 1999, Patrolman Steven Reader, of the Waverly Police Department, charged appellant Shannon D. Arndt with driving under the influence, a violation of R.C. 4511.19 (A) (1). Patrolman Reader also charged appellant with failure to signal his turns, a violation of Waverly City Ordinances 331.14; weaving, a violation of Waverly City Ordinances 331.4 (B); and failure to wear a seat belt, a violation of Waverly City Ordinances 337.27.
A jury trial was had in the Pike County Court, and the jury found appellant guilty of the charge of driving under the influence. The trial court fined appellant $500, sentenced him to one hundred eighty days in jail, with one hundred fifty days suspended, and suspended his driver's license for five years. The trial court also found appellant guilty of the traffic violations, imposed a fine for each violation, but suspended those fines and costs.
Appellant filed a timely appeal of his conviction for driving under the influence, raising a single assignment of error for our consideration:
ASSIGNMENT OF ERROR:
 THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 STATEMENT OF THE CASE
At trial, three police officers testified for the State of Ohio. Patrolman Reader, of the Waverly Police Department, was on regular patrol in downtown Waverly early Saturday morning, September 4, 1999. At approximately 2:40 a.m., Patrolman Reader observed appellant's blue pickup truck complete a right turn without signaling. He followed appellant's truck for several blocks and observed appellant turn left, again without signaling. Shortly thereafter, he observed appellant's truck weave across the centerline of the street, then weave again across the centerline a few minutes later.
Patrolman Reader stopped appellant. As he approached appellant's truck, he observed that appellant was not wearing his seat belt. When appellant rolled his window down, Patrolman Reader noticed a strong smell of alcohol and that appellant's speech was slurred. He testified that appellant told him that he was coming from Gusses Bar, where he supplied entertainment as a "DJ" or disc jockey. According to the patrolman, appellant stated that he drank several beers that evening. Patrolman Reader asked appellant to exit his truck and perform two field sobriety tests for him.
Upon exiting his vehicle, appellant stumbled and almost fell. Patrolman Reader directed appellant to step off the roadway, onto the level portion of an adjoining sidewalk, and instructed him to stand on one leg for ten seconds. Appellant was unable to perform this one-legged stand test properly. Patrolman Reader then instructed appellant to take nine steps, walking toe-to-toe down the sidewalk, turn, and repeat the nine steps. Appellant was unable to complete this test as well. A second patrolman had arrived, and appellant complained that the lights, and the presence of the second officer, made him nervous. That officer left, and Patrolman Reader allowed appellant to repeat both tests. After appellant failed, for a second time, to complete either the one-legged stand or walk-and-turn test, Patrolman Reader arrested appellant and transported him to police department headquarters.
Waverly Police Department Patrolman Ian Lawhorn testified that he arrived at the scene of the arrest just as appellant left his vehicle. Patrolman Lawhorn testified that he was transporting a prisoner to police headquarters and that, in accordance with police department policy, he stopped at the scene to see if Patrolman Reader needed any assistance. Lawhorn was close enough to observe that appellant had difficulty standing and that his eyes were glassy. He was not close enough to notice any odor of alcohol. Patrolman Lawhorn observed appellant's failure to complete either the one-legged stand test or walk-and-turn test. When appellant complained about his presence, Patrolman Lawhorn left the scene to return his prisoner to headquarters.
When Patrolman Reader arrived at the police headquarters with appellant, he provided appellant with a Bureau of Motor Vehicles breath test consent form, or "2255" form. This form informed appellant of his option to take a breath analysis test and the possible consequences if he refused to take that test. Appellant demanded that he be allowed to telephone his father and refused either to take the breath analysis test or to sign the "2255" form.
Sergeant Bruce Ferrell, of the Piketon Police Department, arrived at the Waverly Police Department. Sergeant Ferrell was a qualified BAC Datamaster breath analyzer operator and was on call that night to provide assistance to the Waverly Police Department if that department needed a breath test administered. Sergeant Ferrell observed appellant for twenty minutes, noting the smell of alcohol on appellant's breath and his somewhat combative, or aggravated, nature. Sergeant Ferrell also asked appellant to perform a breath analysis test, which appellant again refused.
Appellant called several witnesses in his defense. His first witness was a neighbor, Raymond Sewell, who helped appellant's father on the Arndt farm. Sewell testified that he did not see appellant drinking on Friday, September 3, 1999. He testified that he last saw appellant at around 11:00 p.m., and that he did not appear to have been drinking at that time. Sewell believed that when he saw appellant at 11:00 p.m., that appellant had just returned from his job at Wal-Mart since, prior to 11:00 p.m., he last saw appellant in the early afternoon that Friday.
Dustin Arndt, appellant's younger brother, also testified. Dustin testified that appellant returned from work at Wal-Mart at around 8:30 p.m. that Friday. Appellant slept on a couch from around 9:00 p.m. to 11:30 p.m., while Dustin was preparing newspapers for delivery. At around 11:30 p.m. appellant awoke and went outside with a flashlight to check on the family's horses. Appellant returned around 12:30 a.m., then left the house around 1:30 a.m. to go into town to purchase donuts. Dustin testified that appellant did not appear to have been drinking up to the time appellant left the farm at 1:30 a.m. that Saturday. Dustin also testified that he did not believe there was any beer in the house.
David Arndt, appellant's father, testified that appellant returned from work at about 5:00 p.m. that Friday and went to sleep on a couch. Appellant was still sleeping on the couch at 9:00 p.m. when David went to bed. David woke up at about midnight and found Dustin still preparing his newspapers, but noticed appellant was gone. However, appellant's truck was still in the driveway. David returned to his bedroom and went back to sleep shortly thereafter.
Appellant testified in his own defense. He testified that he worked that Friday at Wal-Mart from 8:00 a.m. to 4:00 p.m. Shortly after he returned home at 5:00 p.m., he fell asleep on a couch. Around 11:00 p.m., he awakened and decided to check on the family's horses. The Arndts kept their horses on a fenced thirty- acre lot, from which the horses are sometimes able to escape and roam free. Appellant testified that, after walking the perimeter of the fence, he found the horses in the barn, where he fed them a bale of hay.
Appellant claimed that he left the house at about 1:30 a.m., on what was now Saturday, September 4, 1999. He drove to his girlfriend's house to see if she was still awake. There were no lights on at her house. He then stopped at Gusses Bar, where his girlfriend had worked as a waitress, to see if anyone there had seen her that night.
Appellant testified that he was in the bar for five to ten minutes, leaving the bar about 2:20 a.m. to drive into Waverly to buy some donuts, a drive of some twenty-five minutes. Appellant claimed that he did not drink any alcohol that evening, but that he did take a spoonful of cough syrup after he returned from walking the fence line. According to a warning label on the bottle of cough syrup, the syrup has an alcohol content of ten percent and could cause drowsiness, especially if consumed with alcohol. Appellant believed that the alcohol smell Officer Reader noted that morning was the result of beer spilled on him by a patron of Gusses Bar.
Appellant claimed that he was weaving to avoid rough pavement where the street surface was under construction. He testified that he was wearing his seat belt. However, when Officer Reader stopped him, he had to release his seat belt in order to reach across the front seat of the truck to open the glove compartment where he kept his registration. He attributed his failure on the one-leg test to a bad eye. He testified that the officer's flashlights and flashing lights on the police cruisers temporarily blinded him, causing him to lose his balance. He attributed his problems with the walk-and-turn test to a previous injury that also affected his balance.
On cross-examination, appellant conceded that he might have been in Gusses Bar for as long as fifteen minutes. The State submitted additional rebuttal testimony consisting of a written statement by appellant, which was attached to a complaint that appellant filed with the Waverly Police Department on September 12, 1999, concerning police practices. In this statement, read to the jury without objection from the defense, appellant admitted to drinking one beer around 12:30 a.m. Saturday morning, and to taking a tablespoon of cough syrup at about the same time.
 OPINION I
Appellant argues that the verdict of the jury was against the weight of the evidence submitted at trial. Appellant urges us to find that the testimony was contradictory and that the jury "lost its way," thereby returning a verdict unsupported by the weight of the evidence.
If this court is to reverse the judgment of the trial court on the basis that the verdict is against the weight of the evidence, this court must sit as a "thirteenth juror." We must find that we disagree with the factfinder's resolution of any conflicting testimony. Tibbs v. Florida (1982), 457 U.S. 31, 42,72 L.Ed.2d 652, 661, 102 S.Ct. 2211, 2218. The Supreme Court of Ohio sets forth our standard of review as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 546, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.
In deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the State has appropriately carried its burden of persuasion. A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact. Id. at 390,678 N.E.2d at 549 (Cook, J., concurring), citing State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. We are mindful that we should exercise our discretionary power to grant a new trial only in the exceptional case where the evidence weighs heavily against conviction.
 II
The State charged appellant with a violation of R.C. 4511.19
(A) (1), which in pertinent states the following:
 (A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
 (1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse.
As set forth at R.C. 4511.19 (A) (1), the applicable elements of the crime of driving under the influence are operating a vehicle in Ohio while under the influence of alcohol or drugs. Appellant does not dispute that he was operating his pickup truck on the streets of Waverly, Pike County, Ohio, on that early Saturday morning of September 4, 1999. Appellant claims that under the time-line established by his testimony, and the testimony of his witnesses, he did not have enough time that evening to consume an appreciable amount of alcohol. Appellant claims, therefore, that the state could not prove that he consumed enough alcohol to adversely affect his reactions or coordination. Hence, appellant concludes that the State did not establish that he was "under the influence" of alcohol. We are not persuaded.
Unlike the objective standards used to define the per se violations of R.C. 4511.19 (A) (2) through (A) (4), a driving under the influence charge under R.C. 4511.19 (A) (1) is generally proven through the more subjective observations of law enforcement officers. While Patrolman Steven Reader had worked for the Waverly Police Department for only four months, he had worked for a year as a deputy for the Pike County Sheriffs Office. In addition, prior to joining the sheriffs office as a deputy, Reader had over nine hundred hours in experience as a volunteer special deputy with that office. Patrolman Reader received training with both the Pike County Sheriffs Office and the Waverly Police Department on the techniques of field sobriety testing.
Patrolman Reader based his initial assumption, that appellant was under the influence, upon appellant's failure to signal turns and upon his failure to maintain his lane of travel. Furthermore, after he stopped appellant, Patrolman Reader testified that he believed his initial observation of impaired capacity, due to alcohol consumption, was confirmed by the strong smell of alcohol about appellant and his failure to complete the field sobriety tests.
Patrolman Lawhorn began employment as a Waverly Police officer in February 1999. As we recited above, he observed appellant stumble as he left his truck, noted appellant's eyes were glassy, and that appellant failed to properly complete the field sobriety tests.
Sergeant Ferrell observed appellant at the Waverly Police Department for twenty minutes. Sergeant Ferrell is a policeman with four and one-half years of experience as a patrol officer for the Piketon Police Department. He testified to making over a dozen traffic stops for driving under the influence during that time. Although Sergeant Ferrell did not meet appellant until several minutes after his arrest, Ferrell also noticed the odor of alcohol about the appellant's person. That odor, and appellant's "aggravated" state, indicated to Sergeant Ferrell that the appellant was under the influence of alcohol.
In his defense, appellant offered only the testimony of his family members and of a neighbor employed by his father. In addition, that testimony was inconsistent with respect to the time he came home from work, consisting of three very different times from three defense witnesses: 5:00 p.m., 8:30 p.m., and 11:00 p.m. Nor was appellant's own testimony consistent, at one point claiming that he had not consumed any alcohol, then conceding that he drank one beer at around midnight. However, Patrolman Reader remembered that appellant stated that he had consumed "a few beers" at Gusses Bar that evening.
Finally, appellant's refusal to take a breath-alcohol test is admissible evidence at trial. Maumee v. Anistik (1994), 69 Ohio St.3d 339,342, 632 N.E.2d 497, 500; Columbus v. Maxey (1988),39 Ohio App.3d 171, 172, 530 N.E.2d 958, 960. See, also, R.C.4511.191 (A). Hence, in addition to the testimony of the police officers, the jury could properly consider appellant's refusal to perform the breath analysis test in arriving at its verdict.
We have carefully considered the evidence. We cannot conclude that the jury lost its way when it decided that the more credible evidence led to the conclusion that appellant was driving under the influence when he was stopped by the Waverly police. We must allow a certain deference to the findings of the jury, as the finders of fact. DeHass, supra. Therefore, we find that appellant's conviction for violating R.C. 4511.19 (A) is not against the manifest weight of the evidence.
Accordingly, we OVERRULE appellant's sole assignment of error and AFFIRM the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J., and Kline, P.J.: Concur in Judgment and Opinion.
______________________________ David T. Evans, Judge